debtor, Michelle Dougherty Kelsay appellant, the Stephen Michael Kelsay appellee. Oral argument not to exceed 15 minutes per side. Mr. Dennery for the appellant, you may proceed. Good afternoon. Good afternoon. Christian Dennery for the appellant, Michelle Dougherty Kelsay. And I did mention that I would like to reserve five minutes for rebuttal at the end of this initial presentation. And I'd like to start with the post-petition hearing, which was held on proceedings for contempt proceedings that were filed pre-petition. Specifically, debtor is asking the panel to clarify the approach that should be followed by a bankruptcy court when determining whether an exception to 362A1 applies to the holding of a family court post-petition hearing on contempt motions. Debtor reads Woliver and other bankruptcy court decisions as holding that to make the determination, the bankruptcy court first has to look at the nature of the proceedings and also to the actions that were taken by the creditor, if any, to prevent the continuance or the occurrence of a violation of 362A1. Because the bankruptcy court did not follow that particular approach, it arrived at an erroneous legal standard or a conclusion, I should say, that it requests that this panel reverse the bankruptcy order and find that the family court did not have jurisdiction to hold the post-petition hearing on the proceedings for a motion for contempt, which was held in February 19, 2018. Debtor is also furthermore requesting that the panel declare that all orders and collection actions flowing from the post-petition hearing are void and without effect, and remand the matter to bankruptcy court for proceedings on damages that are consistent with that particular approach and these particular findings should they be found. Essentially, debtor's position is that the bankruptcy court sets forth an exception to the automatic state that is not included in the bankruptcy code, and which allowed the court to determine whether an exception applied without considering the nature of the pre-petition proceedings. According to the bankruptcy court, and I am paraphrasing, so long as the family court tailors a post-petition hearing and a judgment to conform with the exceptions found in 362B2, the continuation of the pre-petition contempt proceedings is not a violation of the automatic state set forth in 362A1. The bankruptcy court never expressly found that there was an exception to 362A1 and that an exception applied to the contempt proceedings and the hearing thereof. Instead, the bankruptcy court found that the order, or I should say the family court judgment, arising out of the post-petition hearing provided the exception which allowed the hearing to be held in the first place. Counsel, let me inquire. Please. Is it your position that the entire proceeding is void, and that the court could not determine that aspects of that proceeding were permissible under 362B? B2. B2. And as stated by the court, B2A2, I believe, for the establishment of a pre-petition, I'm sorry, DSO, essentially. Actually, if you look at the statute, the statute says it authorizes, or it's an exception, it says the state does not apply to the commencement or the continuation, right? And then it isn't for the establishment or modification of the domestic support obligation. It's for the establishment or modification of the order for domestic support obligation. Does that make a difference? We've all been proceeding as if it's the order. Well, some of your argument is, well, the DSO, the domestic support obligation, the monument's already been liquidated, so there's nothing to establish. But the statute doesn't talk about establishing the DSO. It talks about establishing or modifying the order for the DSO. Is that a distinction or difference? Well, under these circumstances, whether it's for the order or for the proceedings, the continuation of the proceedings, there wouldn't be a difference, because the order pursuant to which the hearing was held was actually regarding a contempt proceedings, which had nothing to do with the establishment of a DSO. And the order establishing the DSO was entered in August of 2017, specifically at the request of the debtor who requested, again, and I'm paraphrasing, but I think I have it right, an order establishing domestic support obligations that the debtor would have to pay to the creditor. That particular order set forth that $617 was established, essentially, as the DSO monthly obligation that was supposed to be withheld through a wage garnishment order, and also it ordered the debtor to pay 32% of extracurricular medical, dental, and pharmaceutical expenses incurred by the children. And so the contempt proceedings were not part of the order to establish. The contempt proceedings were brought to enforce the order of August 25th, and thereafter a subsequent order of September 14th, that furthermore found that the debtor was owed reimbursable expenses. Counsel, if you're talking about what the contempt proceeding was about, the contempt proceeding was founded on issues with respect to the order, and so you're saying that the state court then had no right to address what the terms of the order were or what the underlying obligation actually was in the order? Is that what you're saying, that if you have a contempt proceeding, you can't actually visit the terms of the order or clarify what those specific terms are? In these circumstances, those terms were specifically clarified already, and so if we're going to say that it's an establishment of, I'm sorry, the work. Modification? Oh, no, not modification. Certainly not modification because modification is a different process under the Domestic Relations Code. But the establishment, which was the basis of the finding that, I'm sorry, to answer your question, all of those issues had been resolved. And the motion specifically requested for contempt based on the violation of the prior order. So it was, in our view, an enforcement action, a contempt proceedings, which is, by all accounts, by all courts, stayed by 362A1. Regardless of the- Doesn't the state court have concurrent jurisdiction to decide whether or not the stay applies, and doesn't every court have the ability to revisit their own orders if they think there needs to be a clarification? The state court does have concurrent jurisdiction. Well stated that, of course, if an exception applies, the state court has a concurrent jurisdiction. If the exception does not apply, then, of course, it's exclusive jurisdiction within the bankruptcy court. And so the question is, was there a determination as to whether the state court found that an exception applied such that it could hold the hearing itself? Now, the hearing, again, was on a motion for contempt proceedings for a violation of an order that previously established the amounts due. The amounts due are not in dispute. And so there was no need- Well, there was a need to file a motion for relief so that they could hear and liquidate the damages if they wanted to. The use of the word establishment is very specific in the code and demonstrates an intent because it is not the use of the word enforcement that the legislature specifically intended to limit that particular exception to the establishment. Again, a word of art in a sense, not necessarily the plain meaning if you're looking at the Webster's Dictionary or something of the word establishment or even a legal dictionary. In the context of the domestic relations, establishment is a proceeding that requires the consideration of child support guidelines. It allows both parties to either contest the amount that should be established as DSO. And so to look at the plain meaning of establishment and say that it's also fixing or liquidating an amount I think is a misreading of the law because establishment is in the context of domestic relations as was used by the creditor in his first motion to establish DSO is specific to the child support guidelines. Also, I believe this. Yes, and that's basically my position is that these were contempt proceedings. They were not to establish and therefore they didn't create the exception that would be required to exercise concurrent jurisdiction. Counsel, let me ask maybe a little more fundamental question. If you had three types of relief being sought in one motion and two of them clearly fit within an exception and one didn't, is it your position that you can't go forward at all with that motion or that hearing or is it okay to go forward with the two things that fit within the exception? My position is that it would be okay to narrow the contempt proceedings to take away any mention of a contempt and that is borne out in Wolliver. It's actually borne out because of the affirmative duty of the creditor to take actions to avoid any violations of the state. The creditor should have sufficient time after the petition is filed to get notice, first of all, and secondly, to take actions under the affirmative duty to avoid a violation of 362A1, to modify and to narrow the request that it's asking of the court. And it did not. There's no evidence in the record that the creditor narrowed the request. The court actually in its order actually specifically mentioned that there was no order, no narrowing of the request, but found inside of the judgment that was pursuant, that arose out of the post-petition hearing, an exception because according to the court, it conformed the judgment and the hearing to the exceptions found in 362B2. And so to answer that... I know we're running out of time, but one more follow-up on that. If the judge recognizes the exceptions properly, even though the lawyer maybe was going slightly beyond the exceptions, is it still a violation of the state if the end result is that it fits within the exceptions? Well, that would open the gate on the doorway to basically re-characterize any judgment to fit within any particular exception. The same is true in Bolivar where the panel found that the re-characterization of a contempt proceeding into one that is a Pena proceeding, simply based off the incarceration order, wasn't sufficient to convert, and there are many cases that show this, wasn't sufficient to convert the pre-petition contempt proceedings into a criminal proceeding that would be accepted under 362B1. And so in the same breath, you cannot look at the judgment that comes out of a hearing that's in violation of the state to determine that an exception applies. The exception could be written out of the code by any family court. But except if you use that logic, it is always going to be dependent on the creditor prior to the filing of the bankruptcy to word the motion for contempt in such a way that the cohort could make a determination prior to that there is no stay in specific language that you think provides for the stay to be determined not to be in existence, because what you're saying is it wasn't written right and they didn't use the right words, but the effect is the same, that there were issues that were determined that did not need to be stayed. And if we're not going to elevate form over substance in what happens, then we need to look at the totality of the circumstances. And slapping the word contempt on a hearing doesn't necessarily determine what the actual issues are. Is that correct? The labels, as you well pointed out, are not operative in determining whether a motion is for contempt or a hearing is for the establishment. That is correct. But the actions of the debtor after having noticed and their affirmative duty, and we're reading whatever to say that if you have an affirmative duty and you know that a violation of the state could occur, that you would have to narrow your request. A case in, I think it's the northern district of Alabama, I believe, I'm not sure, but it's in Ray Forkish, it is in the brief, specifically shows the efforts that could be taken after the filing, after notice is provided, prior to the hearing, and at the time of the hearing of what a creditor could do to narrow the scope. Now, in this case, the motion actually only mentioned contempt. It didn't even ask for attorneys fees, which could arguably have been DSO. It asked specifically for contempt at the time of the hearing. The creditor specifically asked or stated generally that 362b2 accepts DSO obligations from the automatic stay. That is not sufficient, I believe, to elevate the substance of a post-petition hearing into an exception over the form of the actual contempt motion. There was no evidence in the record to show that the contempt proceedings were at all narrowed, and so if we take away the affirmative duty of the creditor to prevent the occurrence or the continuance of a violation, then all they spend goes back to the time of the hearing. And again, the debtor is not unnoticed. There are many cases where the debtor doesn't even have to show up for a hearing, as an example, and then are incarcerated. They believe that the automatic stay says what it says, that all proceedings to recover a claim against the debtor must cease. The exceptions, again, being narrowly construed, especially the words establishment and enforcement being distinct from one another, I don't believe that the family court had jurisdiction to hear the matter to begin with. Thank you. Thank you. Good afternoon. Counsel, may it please the Court. Mike Baker for Appellee Stephen Kelce. I think the issues raised in this appeal can be boiled down to sort of three main questions, and those are did the bankruptcy court abuse its discretion in its punitive damages award? I think that answer is no. Did the bankruptcy court abuse its discretion in its attorney's fees award? I think that answer is no. And did the court correctly apply the exceptions to the automatic stay to the hearing that occurred in family court? And I think that answer is yes. And I think the questions that have already been asked so far this afternoon sort of dance around the tension between is it form over substance? And I think if we decide that it is substance, it matters what the domestic court actually did versus the labels that the creditor may have put on it, that the domestic court may have inferred from the creditor, that the better way is the way the bankruptcy court approached it, which is they looked at what actually happened. And to Appellant's point, that Pandora's box would be opened if parties think that they can just continue all the time. I think this case exactly shows why that's not the case. Because the bankruptcy court found that not everything that the creditor did was liable and sanctioned the creditor appropriately for that. The finding of contempt, after the hearing, the request for the check to be brought to the visitation, and the order for the debtor to pay part of the fee directly as opposed to the garnishment exceptions in the code, were all found to be violations by the court. So this was not an emergency situation. And the question that comes to my mind when we're looking at situations like this is why not just ask for the relief from stay? I think that you pose the better practice. And I think that sometimes when we look at exceptions to the stay, we have to distinguish between what the limits of the code allow versus what would be preferable for the parties. And I think here, my advice, my standard advice to clients is you're always safer getting an order from the bankruptcy court telling you whether or not the stay applies than you are proceeding in the hopes that your exception applies. But that doesn't mean that because you don't do that, that the exceptions cannot be examined once action has been taken. I think as we sort of go through looking at what happened in the hearing and how the bankruptcy court approached the substance of those actions, it becomes more clear as to why the court didn't abuse its discretion when it awarded damages. If we look at the actions that the debtor complained violated the stay, in order for the attorney's fees to be viewed as reasonable, the debtor needs the form over substance. The debtor has to have that the domestic court could not have acted at all. And I think this presents a case where the debtor kind of wants it both ways. And that is, on the one hand, the creditor is saying that the entire hearing was void because it was styled as a contempt hearing. And the fact that creditor didn't affirmatively change the form of the hearing or the title of the hearing before it occurred means that we don't get to the exceptions to the stay. I just don't think that's correct. But at the same time, in other places during her brief, the creditor or debtor also says that we always elevate form or substance above form. And I think once you get there, that's what the bankruptcy court did here. And the reason that that matters is that when we go to look at how the bankruptcy court applied the load-starter fees and the assessment of punitive damages, it looked first at what was in controversy. And the court, when it decided that the fee award was appropriate, assumed that $1,300 was in controversy, that that was the amount. So even if this court determines that the bankruptcy court erred when it decided that the garnishment of the tax refund violated the stay or that Mr. Kelsey had an affirmative duty once you received those funds to turn those over to the debtor or the trustee, the bankruptcy court already looked at the awards of fees from the mindset that if this was the amount in controversy, were debtor's actions reasonable. The issue of whether or not the creditor's actions were reasonable, the amounts that are being contested were for support obligations, is that correct? That is correct, Your Honor. And so they would have been non-dischargeable and they would have been collectible ultimately. So again, why proceed here? Why not, once there was knowledge of the bankruptcy, just stop? Well, Your Honor, again, I think that you are presenting the better practice. And I think in practice, if a colleague comes to me and says, should I go forward with this hearing, my answer is always going to be no. There's no emergency. You're safer to go ahead, go back to bankruptcy court, get an order confirming the status of the stay. And I think that's the better practice. But the exceptions to the stay doesn't survive whether or not you get that determination first. I think what happens is that a creditor proceeds at their own risk when they decide or they ask a family court to decide whether or not the stay applies. And I think the result you get is the result we have here, which is certain portions of what the family court did were viewed to violate the stay and creditor was sanctioned for that. I'm sorry, go ahead. Let me ask a related question about form over substance. The court found that there was not a violation of the stay with regard to the hospital visit amount. But if you're looking at form over substance, the visit was on January 7th, and that same day, which was two weeks before the bankruptcy, that same day there was an email that says please be prepared to pay your portion of the copay. And then another one that said ER copay is $350, so please be prepared to pay your part. Now, it's true that some of the formal process of making the demand under the 30-day process and all didn't occur until post-petition. But if you're wanting us to pay attention to form over substance, pre-petition there was a notice that this debt has been incurred, you're going to need to pay your portion, and here's the amount. Why is that not a violation of the stay if you're looking at pre-petition versus post-petition and you're focusing on form over substance? I think if we look to the Cleveland case, which I think we both cited in our briefs, it talks about the enforceability of the obligation to pay. And I think in the example that we're talking about here, there probably is some arbitrariness in the sense of we all know this is coming, but the event that gives rise to legally binding liability doesn't occur until after the bankruptcy is filed. And I think that is likely what the division line is, as arbitrary as it may be. Isn't it fair to say, though, that there was a claim that it was unmatured? It wasn't matured until the 30-30 notice was given. I'm not sure that's correct, Your Honor, because if Mr. Kelsey, regardless of how many emails or texts that he sends saying be ready to pay your bill, this is what I think it's going to be, until he follows the steps of the 30-30 order and those steps that are set out by the domestic court. That's not enforceable at all. There's no liability on the claim. It is the sending, it is the following of the steps set forth in the 30-30 order that gives rise to liability on a claim, which is sort of analogous to the term that we use in 11 U.S.C. 101. And I think that while we may be able to say that that might be arbitrary or that there are times that people, you know, had this just happened a couple days earlier or a couple days later, that it's likely that it could have been pre-petitioned. I don't, I think we have to draw the line somewhere, and I think the bankruptcy court drew that correctly. This is not the same as contingent liability on a guaranteed debt where something's already liquidated and all that's waiting is the default. You're liable on those guarantees the moment you sign them. It's just a matter of how much or when. And is it the same as an accident where you have an accident, but until there is a lawsuit, you don't know who's responsible? Because the thing that caused the potential to owe has happened prior to the filing. I think certain aspects are similar, but I don't think they're quite the same. And I say that because I think when we look at tort, you know, that liability, although we don't know it, is established at the time the action occurs, the accident occurs, the casualty occurs. Versus here, if Mr. Kelsey never sends the notice, he forgets about it, he loses the bill, whatever, and then on that 31st day seeks collection of it, it legally has no effect any longer. It is the fact that they serve it within the 30-day window of receipt that is integral and an element of liability. It's not just a coincidence or a ministerial act, I think if we were looking at it from a different standpoint. I think if you go down the road that we could see that it's coming, that that leads to perhaps the conundrum that the bankruptcy court pointed out, which is we may have a case in which maybe a 30-30 order gets entered when a child's in third grade and they just get their braces. And we know each year there's going to be this visit to the orthodontist and it's going to be $400. And every year your liability is going to be whatever percentage of that $400 it's going to be. If we're using the logic that I think the debtor wants us to, what's going to happen is that you could extend that to the point of it's not just that first orthodontal visit that happens right next to the petition, but every one afterwards or at least during the life of the plan. And I think that's really the worry. But doesn't the code address that by saying unmatured domestic support allegations, you can't file a proof of claim for those? 502? I think that there is a way that you can do that, but I don't know that that changes the issue of whether or not it's pre-petition or post-petition. And I mean some of it may be, my example may not be the best, but I think at times, I think in this particular case, if there isn't a requirement that the bill had to be sent to establish liability, we might have a different answer. But I think it's the wording of the 30-30 order from the domestic court that requires the service of the invoice to the party that you're seeking payment from that makes the difference. And it's because that happened post-petition is why we view it as a post-petition debt. While it occurred after the briefing, I did want to direct the court's attention to the certain extent that there was an argument that Mr. Kelsay had an affirmative obligation to turn over the tax refund to the extent it was still property of the estate. And I think we cite authority in our brief as to why we do not think it was property of the estate any longer, even if the exception didn't apply. I think the Supreme Court's case in the meantime that was decided after filing, or after briefing in this matter of the city of Chicago versus Fulton, cast doubt on whether or not in re sharing, which is the authority that was relied upon for that argument is good law any longer. I do think at the end of the day, one other issue that sort of permeates this entire case is that there really wasn't a lot of damages that were even alleged in this case. And I think that is part of what affects the reasonableness of any award that occurs afterwards. Even at the issue that we were just speaking of, the $112, there were no direct monetary damages asserted at trial. The only damages that were ever asserted were the tax refund, the attorney's fees, and a request for appropriate punitive damages. And I think when we look at how those items were awarded, once you've crossed the threshold into being eligible for punitive damages, it doesn't really matter what else comes in. I mean, part of what the argument here is, is if the bankruptcy had just heard more evidence about how bad the creditor was, they would have necessarily awarded a higher punitive damage award. I just don't think that's the way the code's written, because it's written from the point of view, it's a pretty high bar to get to the point where you get punitive damages. And once you've met that, you're not extra punitive, I guess, is the word I would use as probably not the best legal term. And with that, if the panel has no more questions. So the amount in controversy then affects the Lodestar analysis in what way? I think it affects it as towards reasonableness of the fee requested. And I think that analysis... You shouldn't have spent that many hours with $1,200 in dispute. You shouldn't have spent that many hours when there wasn't a meaningful attempt to mitigate over $1,200 in dispute. And I think that's the difference. I don't think there's such a thing as a low... It's not that if there were no damages or a low damages, that attorney's fees are never appropriate. We could construct hypotheticals that would seem to meet that. But I think it's the mitigation issue that the court was focusing on when it looks at the reasonableness analysis. And I think if we look at the stipulated record, debtor never asked for less than $15,000 throughout this entire case. And that was at a time when the damages in controversy were only about $5,000, somewhere in that range. If you count the tax refund and the attorney's fees to that date, maybe $5,500. And I think it's the fact that the debtor stood firm at $15,000 and didn't do anything to mitigate it that the bankruptcy court said it's unreasonable to continue to go on merely to run up the cost. But is it always just to run up the cost? Bankruptcy judges see cases all the time where a creditor pursues some post-discharge action, but the only actual damages are basically the attorney's fees to go after the creditor and the time spent by the debtor to come to court to testify because there's nothing else that actually occurs in terms of any monetary amount. But if you basically say, well, there's no real damages except for the ones that the lawyer created by bringing the motion, then nobody ever pursues discharge violations or automatic stay violations because lots of times the actual damages are pretty nominal. I think the court addresses that in its opinion when it looks at the total amount in controversy. And because the court views the reasonableness of the attorney's fees sought in sort of a fiat, the actual damages you're asking for, we're going to assume that those were reasonable at the time and that you would have been awarded them. How much time do you spend on those damages without trying to mitigate your damages at all? And I think that's really the analysis. It isn't as simple as your damages were $5, so your fees can never be more than $10, if that answers your question. So it's more about the mitigation part than the numbers in any other way as far as reasonableness. I believe mitigation is a key factor in reasonableness. Yes, Your Honor. Thank you. Thank you. Thank you, Your Honors. Before you go any further, let's talk about mitigation. What do you believe is the responsibility when you're looking at a stay violation for the mitigation with respect to ensuring that the cost to pursue is not immensely in proportional to what the actual damages would be? First, I would say that costs that are unnecessary, one would have to mitigate those unnecessary costs. So if a violation has been cured, as an example, two invoices are sent to a debtor. And that's a hearing stopping, the third hearing stopping. Again, assuming that the violation ceased at that point, then I believe that the duty would be to mitigate the damages. But 362K1 includes attorney's fees as damages, and it includes the time and effort spent to collect those damages. It's not as if the creditor was offering the $5,000 at the time that they withdrew that particular motion. And because damages or attorney's fees are included in actual damages, the damages to pursue the damage award is actually included in 362K1. Otherwise, again... But this goes back to the issue of what is reasonable. And so, again, what we're talking about is a domestic support obligation. We're talking about money that is due, money that's going to be remaining to be due. And, really, the big question between the parties is what timing that payment is going to be able to come in. Because we have a Chapter 13 case that is seeking to spread out the time for the prepetition damages, or the prepetition obligation, but the obligation is still always going to become due. So how do we get to the point where this keeps going to five-figure damages for an obligation the debtor knows she's going to have to pay? If the exceptions to the Edematics Day for collections or the establishment of DSO or withholding of income included some sort of limitation... The limitation is reasonableness. How is it reasonable to continue to keep going forward when the hearing has stopped and now the only issue is the amount that has been collected? That's where I'm not clear how this keeps going to the point of excessive damages once there's a contempt hearing that has stopped and the parties are now moving forward. I'm not hearing you explain that there is a point where the parties should stop. Because it feels like what you're saying is so long as there is an identifiable issue, you can keep going ad infinitum. That can't be reasonable. I would say that so long as there's a violation that's still occurring, that again, 362K1 essentially creates a private attorney general sort of function in the code to pursue the violations of the Edematics Day. So again, assuming that the withdrawal of content notion number three was the cessation of all violations, perhaps I would agree with the fact that more mitigation should have occurred. Perhaps the negotiations between the parties should have been tempered by the cessation of the violation. But the fact that the DSO is non-dischargeable does not mean that there wasn't a violation in 362A1 by the holding of the hearing. And again, I would impress the panel by saying that the holding of the hearing... When the judge has said, I think we go forward. And that was actually the argument. I believe... I don't know the case. It is cited in the brief where, again, the creditor wants to relieve themselves of their affirmative duty, turn the burden on its head, and essentially say that the court... At the point where the second hearing in this particular case was a hearing on sentencing, it was out of the hands of the creditor. The creditor could do nothing more. But again, Warbur reaffirms that a creditor has an affirmative duty to do everything that he can to cease a violation. It cannot absolve itself by allowing the court to just go forward and say, well, the court did it all, and therefore it's not our fault. That is not what I believe my reading of the case law suggests at all. The affirmative duty persists. And that's exactly where the question has to be whether the hearing was in violation of 362.1 and nothing afterwards. Because once one finds that the hearing was in violation of the state, then it's clear that everything else was void, without effect, and also a violation of the state. And if, on the other hand, one finds that the hearing is not a violation of the state, then perhaps the creditor has absolved their affirmative duty at that point. But that, again, rests on the assumption that there wasn't a violation to begin with. No one has found that there was an exception that permitted, at the time that they had noticed, and sufficient time to correct their actions, there was nothing expressed in the record that says that the hearing was not a violation of 362.1. And that's where I believe this case sits. If civil contempt proceedings are permitted, notwithstanding 362.1, to proceed, and thereafter, retroactively, a violation could be corrected in the judgment, I believe that that rights the exception out of the code. It also gives the family court jurisdiction where there may not be. It's a slippery slope. It sends a message to the Eastern District of Kentucky that when a bankruptcy is filed, the order of relief doesn't mean anything. It's business as usual. We keep operating in these domestic courts as if DSO is accepted in a broad language. DSO is accepted by 362.2. That's all I have to write inside of the order, and I can cure, retroactively, any violation of the state. So the judge should have been part of this state violation? Yes, it creates complications to add multiple litigants, a lot of expenses, and again, in terms of mitigating the expenses, we could have named the attorney, we could have named the judge, and how much more work would that have created? But the message issue that you just raised, how could anyone get the message that you can just do anything you want to with a DSO obligation when there was contempt found on certain actions? There were punitive damages found, even if there's an argument that it wasn't enough. There were attorney's fees awarded. The question is where's the gray area, where do you draw the line, all of that, but how do you get to the point of saying that there's this terrible message being sent when it's only a question of which specific actions on some very small dollar amounts were over the line and which ones were not over the line? Why would you be so concerned about the message we're sending? I think it's about the bankruptcy code, and I think it's about showing fealty to the automatic state and to reading the exceptions narrowly, to following that so there's certainty in mitigation, so that the domestic support or the domestic bar in Kentucky can actually say, oh, I better look at this very carefully and take a little more of a pause, likewise with the family courts and how they treat these issues. Just because of... It does that. This order tells everybody, pause before you go forward, because what you're doing may not be valid. And I think your argument is that because some portion of it, which was not necessarily covered by the state or was an exception to the state, were determined to exist, that saying that the fact that those things exist means that even if those things exist, you still can't go forward. That's the problem. Because it sounds like what you're saying is you can never go forward, even if there is an exception. And I don't think that we need to be there because the bankruptcy court made a differentiation between what was appropriate and what was not appropriate, and that's what we're asking the court to always do in these situations. The line was drawn. The determination was made narrowly about what was part of the exception and what was not, which is why there were sanctions ordered. So that happened. So there is no slope because the determination was made. The determination was made based on the post-petition judgment that was flowed out of the post-petition hearing. It was not made from the nature of the actual proceedings. So again, to look at civil contempt proceedings, and then after the post-petition hearing to convert them into ones that fit within a criminal exception because there's an incarceration order, does not retroactively cure the fact that the hearing should not have been held. I believe that this panel, in their work, found exactly that. Many other courts have found the same thing, that you cannot turn continuation into a transformation into a different type of order. And again, to be loyal to the court requires a narrow construction of the exceptions. Again, that contempt or that certain portions of the order were found to be in contempt does not retroactively cure the violation of having held the hearing. I have not heard yet an argument from the coditor or anybody else that the hearing was permitted notwithstanding 362A1 at the time the hearing was held. No. Let me just suggest and see if you can respond to this, that what came out of that hearing is what the bankruptcy court parsed and said some of it was permissible and some of it wasn't. Isn't it fair to infer that what came out of the hearing tells us about what the hearing was about? So some of that was the continuation of a civil proceeding for the modification of an order, not modification of the domestic support obligation, modification of an order for domestic support. It's a distinction that is in the statute. I'm not making it up. And there's an inference to be drawn about what happened at that proceeding from what came out of that proceeding in the form of the family court's order. Isn't there? To begin with, the modification of a DSO order requires a particular procedure under state law. That procedure was not part of the contempt proceedings or of the actual hearing, the post-petition hearing. And likewise, establishment, in our estimation, is also codified in the Domestic Relations Code. One has to follow certain procedures to have an order. So as to whether it's a modification or an establishment of an order, it was actually a reduction to the common law judgment of pre-petition arrears. That's what the contempt proceedings were about. It was for a violation of a prior order on September 14th that ordered the debtor to pay reimbursable expenses. That was the nature of the hearing. It grew into being the establishment of a post-petition or a DSO. And I believe that's a faulty construction. Thank you. Thank you very much. Good afternoon.